UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-301-GWU

ANGELA BOLEN, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Angela Bolen brought this action to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Bolen, a 30-year-old former cashier and factory worker with a "limited" education, suffered from impairments related to depression and anxiety. (Tr. 14, 18-19). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of work at all exertional levels. (Tr. 17). Since the claimant was found to be able to return to her past relevant work as well as a significant number of other jobs in the national economy, she could not be considered totally disabled. (Tr. 18-19). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 19).

After review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert James Miller included such non-exertional restrictions as (1) a limitation to work requiring only simple instructions; (2) a need to avoid work requiring contact with the general public and no more than occasional and superficial contact with co-workers and

supervisors; (3) an inability to perform highly stressful work such as that requiring production rate work or quotas; and (4) a need to avoid work requiring reading. (Tr. 923-924). In response, Miller testified that Bolen's past work could still be performed by one so limited. (Tr. 924). As an alternative, the witness identified a significant number of other jobs which could still be done as well. (Id.). Therefore, assuming that the vocational factors considered by Miller fairly characterized the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly characterized Bolen's condition as required by Varley. Psychologist Gary Maryman examined the plaintiff and diagnosed opiate abuse (allegedly in remission) and a dysthymic disorder. (Tr. 472). Maryman opined that the claimant's mental problems would limit her to simple and somewhat more complicated instructions and tasks and restrict her ability to deal with the general public. (Id.). The examiner opined that Bolen would be able to sustain the focus, concentration and persistence needed for her to carry out a routine work schedule, that she would be able to reasonably interact with fellow co-workers and supervisors and that she would able to adapt to the pressures of low to medium stress work. (Id.). The mental factors considered by Miller were compatible with this opinion.

Psychologist Greg Lynch also examined Bolen and reported a diagnostic impression of a major depressive disorder (in partial remission due to current treatment) and a generalized anxiety disorder. (Tr. 251). Lynch opined that the plaintiff would experience no more than slight impairment with regard to handling simple instructions and sustaining attention and concentration for simple, repetitive tasks. (Id.). The claimant would be "moderately" restricted in tolerating stress and work pressure and responding to supervision, co-workers, and work pressures. (Tr. 251-252). The ALJ's findings were also essentially consistent with this opinion.

Psychologists Jan Jacobson (Tr. 478-479) and Ilze Sillers (Tr. 764-765) each reviewed the record and opined that Bolen would be "moderately" limited in understanding, remembering, and carrying out detailed instructions, completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable length and number of rest periods, interacting appropriately with the general public and responding appropriately to changes in the work setting. The hypothetical question was consistent with most of these restrictions with the exception of that of completing a normal workday and workweek without interruption from psychologically-based symptoms. These were the opinions of non-examining sources and were contradicted by the opinions of Maryman and Lynch, each an examining source. The Administrative regulations provide that "generally, we give

more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 416.927(d)(1).  Therefore, these opinions were outweighed and offset by those of the examiners.

Dr. Sherrell Roberts, Bolen's treating physician at Monticello Medical Associates, reported in September of 2008 that her patient suffered from depression, a panic disorder, drug abuse and Hepatitis C.  (Tr. 882).  The doctor later deleted drug abuse as a diagnosis.  (Tr. 873).  Dr. Roberts opined that the plaintiff would have a "fair" ability to remember work-like procedures, understand, remember and carry out short and simple instructions, maintain attention for two-hour segments, work in coordination with or proximity to others without being distracted, performing at a consistent pace without an unreasonable length and number of rest periods, asking simple questions and requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers and peers without distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, dealing with work stress, being aware of normal hazards and taking appropriate precautions, understanding, remembering and carrying out detailed instructions, setting realistic goals and making plans independently of others, dealing with the stress of skilled or semi-skilled work, interacting appropriately with the general public, maintaining socially appropriate behavior, and traveling in unfamiliar places.

(Tr. 875, 884). She would have a "poor or no" ability to maintain regular attendance and be punctual within usual, strict tolerances, sustain an ordinary routine without special supervision, and complete a normal workday or workweek without interruptions from psychologically-based symptoms. (Id.). The claimant asserts that the ALJ erred in failing to adopt these restrictions of the treating source.

      The ALJ noted several reasons why he believed that Bolen was not more impaired than he found. (Tr. 18). The ALJ indicated that Dr. Roberts had been inconsistent in assessing the plaintiff's history of drug abuse. (Id.). The ALJ sought clarification from Dr. Roberts, who stated that drug abuse had been deleted as a diagnosis as a result of the plaintiff's own assertions that this was no longer a problem for the past year. (Tr. 900). The doctor had not confirmed this claim with any recent random drug testing. (Id.). Dr. Roberts indicated being unable to discern what mental restrictions would relate to drug abuse and which would be the result of a discrete mental impairment independent of such abuse. (Id.). Public Law 104-121 precludes a finding of disabled status when drug or alcohol abuse is a contributing material factor to disability. Dr. Roberts was not a mental health professional and the ALJ chose to rely upon Maryman and Lynch who were. (Tr. 18). The administrative regulations provide that "we generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist." 20 C.F.R. §

416.927(d)(5). Therefore, under these circumstances, the ALJ properly rejected the opinion of Dr. Roberts.

Bolen also asserts that the ALJ erred by failing to consider the combination of her impairments. However, the court has already determined that the hypothetical factors fairly characterized the plaintiff's condition. Thus, the ALJ implicitly considered all of the claimant's impairments in combination. The ALJ discussed the evidence and the claimant's allegations as required by Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). The court found that the ALJ dealt properly with the evidence relating to Bolen's mental condition. Dr. Matin Fritzhand, an examining consultant, did not impose any physical restrictions. (Tr. 474-477). Dr. Amanda Lange, a non-examining medical reviewer, specifically found that the plaintiff did not suffer from a "severe" physical impairment. (Tr. 778). The claimant has not indicated what impairments were not properly considered. While the ALJ found that Hepatitis C was a "non-severe" impairment, no source of record indicated that additional restrictions were required as a result of this or any other condition and this condition was considered by the ALJ. (Tr. 16). Therefore, the undersigned must reject Bolen's argument.

Bolen also argues that the ALJ erred by failing to properly consider whether she meets the durational requirements for substantial gainful activity. The plaintiff cites the Ninth Circuit Court of Appeals case of Gatliff v. Commissioner of Social

Security, 172 F.3d 690 (9th Cir. 1999). However, in Gatliff, the record contained considerable evidence that the claimant would not be able to maintain employment more than a couple of months and the ALJ had even acknowledged this fact. Gatliff, 172 F.3d at 692. In the present action, the plaintiff has not identified similar evidence suggesting that she would not be able to maintain employment. Therefore, the court must reject this argument of the claimant.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 31st day of August, 2010.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**